IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY TAKACS,                    )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )     Civil Action No. 04-59
                                   )
CYRIL BATH COMPANY and             )
NATIONAL INDUSTRIAL SERVICES,      )
INC.,                              )
                                   )
            Defendants.            )


MEMORANDUM OPINION

BLOCH, District J.


        Presently before the Court is the Motion for Summary
Judgment filed by Cyril Bath Company ("Defendant").[1]   For the
reasons set forth in this opinion, Defendant's motion is granted.

**I. Background**

        Timothy J. Takacs ("Plaintiff") has filed the instant
action alleging that Defendant should be held strictly liable and
negligent for defects in a product manufactured by Defendant's
predecessor in interest.  Specifically, Plaintiff alleges that the
product-line exception to the general rule of non-liability for
successor corporations is applicable to Defendant.

_____

[1] As to defendant National Industrial Services, Plaintiff's Request
to Enter Default was granted on July 28, 2004, and Cyril Bath's
Request to Enter Default for failure to plead or defend against
cross claims was granted on September 9, 2004.

1

Defendant has filed the present motion seeking summary judgment ("Defendant's Motion") arguing that it is not liable to Plaintiff under any exception to the general rule of non-liability for successor corporations, including the product-line exception.[2]

## II.  Factual Background

This suit originates from injuries suffered by Plaintiff while he was employed at Cleveland/Price, Inc. (CPI). Plaintiff was operating a "press brake", a device used to bend metal, and accidentally engaged the press brake while his left hand was attempting to remove a pin from within the machinery, causing the middle three fingers of his left hand to be amputated.  The press brake at issue in this case was manufactured by "The Cyril Bath Company of Cleveland, OH" in 1942, and purchased by CPI from a National Industrial Services auction in 1988.[3]

Since 1976, the original "The Cyril Bath Company of Cleveland, OH" has undergone numerous business incarnations. In 1976, "The Cyril Bath Company of Cleveland, OH" sold the portion of its business engaged in the manufacture and sale of press brakes, stretch forming machinery, and contract forming services to TCBC Company ("TCBC"), an Ohio Corporation. (Plaintiff's Response to

---

[2] Because this is the only exception relied upon by the Plaintiff, it is the only exception this court will address in its opinion.

[3] The history and usage of this specific press brake between 1942-1988 is unknown.  This information, however, is irrelevant to the Court's determination of liability in this case.

2

Defendant's Motion ("Plaintiff's Response"), Exhibit 1, at 1). According to the 1976 Purchase Agreement, TCBC only assumed liabilities associated with leases and contracts associated with the business, not products liability claims. Id. at Section 1.02. Significantly, although the 1976 Agreement expressly referenced "press brakes", at no time after this sale were any press brakes manufactured by any successor corporation.  The press brake line was discontinued, though the successor corporations did continue other product lines (e.g. stretch forming machinery).

It is unclear what became of the original "The Cyril Bath Company of Cleveland, OH."  Even though it sold various businesses to TCBC and the 1976 Purchase Agreement specifically granted TCBC the exclusive right to the name "The Cyril Bath Company," "The Cyril Bath Company of Cleveland, OH" operated a separate business - the manufacturing of Bradbury automotive lifts, which, at the time, it intended to continue operating under a different name. (Plaintiff's Response, at 6 and Ex.1).[4]

In 1991, the assets of "The Cyril Bath Company" (formerly TCBC) were sold to CB Acquisition Vehicle, Inc. ("CBAV"), a Delaware corporation, with a principal place of business in New York, New

---

[4] Specifically, Section 3.06 required the Seller, i.e. the Cyril Bath Company of Cleveland, OH, to "cause its name to be changed to a name which is agreeable to Buyer."  Further, the Agreement required the Seller to "provide Buyer with an appropriate certificate from the Secretary of State of Ohio evidencing such change." (Plaintiff's Response, Ex. 1 at 21).

York.  CBAV likewise obtained the exclusive right from TCBC to use the name "The Cyril Bath Company".

In 2000, ALSTOM, USA, Inc. ("ALSTOM"), a Delaware corporation with a principal place of business in Hawthorne, New York, transferred 100 shares of common stock of its wholly-owned subsidiary, Cyril Bath Pressure Systems, Inc. ("CBPS"), to ACB Pressure Systems, S.A., a French corporation.[5]

At present, "The Cyril Bath Company" is an Ohio corporation with a principal place of business in Monroe, North Carolina.  Additionally, the website for The Cyril Bath Company lists ACB Pressure Systems as a "sistership company" in France.

### III. Applicable Legal Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[5] The parties' briefs do not adequately explain this transaction. It is assumed that CBAV was a subsidiary of ALSTOM, and that somewhere along the line the assets purchased by CBAV from TCBC became known as CBPS.  In any event, "The Cyril Bath Company" name was included in the 2000 Purchase Agreement.  Again, however, this information is irrelevant in the Court's determination of successor liability under the product line exception.

4

judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson</u>, 477 U.S. at 247-48.  The summary judgment standard requires the issue to be genuine, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the nonmoving party with regard to that issue.  <u>See id</u>. In addition, the disputed fact must be "material," meaning it might affect the outcome under the substantive law.  <u>See</u> <u>Boyle v. County of Allegheny</u>, 139 F.3d 386,393 (3d Cir. 1998).

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility.  <u>See id</u>.  The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position.  <u>See</u> <u>Schulz v. Celotex Corp.</u>, 942 F.2d 204, 210 (3d Cir. 1991).  When an examination of the record as a whole reveals sufficient evidence for a rational trier of fact to return a verdict in favor of the non-movant, a genuine issue of material fact exists and summary judgment

should be denied.  <u>See</u>, <u>e.g.</u>, <u>Matsushita Elec. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV. Discussion

The sole issue in this motion for summary judgment is whether "The Cyril Bath Company" is a successor corporation of "The Cyril Bath Company of Cleveland, Ohio," for purposes of holding it strictly liable for the injury suffered by Plaintiff.  The general rule regarding successor liability in Pennsylvania is that when one company sells all or substantially all of its assets to another company, the purchasing company does not become liable for the debts and liabilities of the selling company. <u>Polius v. Clark Equipment Company</u>, 802 F.2d. 75, 77 (3rd Circuit, 1986).

The Pennsylvania Supreme Court has recognized five exceptions to this general rule of non-liability: "(1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation." <u>Cont'l Ins. Co. v. Schneider, Inc.</u>, 582 Pa. 591, 599-600, 873 A.2d. 1286, 1291 (2005).  The Pennsylvania Supreme Court in <u>Cont'l Ins. Co.</u> also recognized the existence of a sixth exception - the product-line exception, however, it found that

6

exception was not applicable in that case.[6]  <u>Cont'l Ins. Co.</u>, 582 Pa. at 600.

In the instant case, however, Plaintiff relies solely on the product-line exception, conceding that none of the other exceptions are applicable under the facts of this case. (Plaintiff's Response at 3). Pennsylvania courts first recognized the product-line exception in <u>Dawejko v. Jorgensen Steel Co.</u>, 290 Pa. Super. 15, 434 A.2d 106 (1981).  The theory behind the product-line exception is that in cases of strict tort liability neither the general rule nor any of the exceptions to the general rule would allow recovery for the Plaintiff and rather than expand the preexisting exceptions, the court chose to adopt a sixth.[7]  <u>Dawejko</u> at 19-20, 434 A.2d. at 107-108.  The product-line exception specifically provides that "where one corporation acquires all or substantially all of the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly

---

[6] Pennsylvania is one of a very few states to have recognized the product-line exception.  While not passing on the issue directly, the Third Circuit recently noted "the confusing effect of introducing an explicitly tort-based exception to a traditionally corporate and contract-based doctrine." <u>Berg Chilling Sys. v. Hull Corp.</u>, 435 F.3d 455, 465 (3d.Cir. 2006).

[7] In many cases, the Plaintiff would have no remedy because the original corporation would have long been out of business or its whereabouts unknown.  Thus, a successor corporation was the next logical choice for a Plaintiff to bring a suit against. <u>Dawejko</u> at 19-20, 434 A.2d. at 107-108.

liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor." _Dawejko_, 290 Pa. Super. at 23, 434 A.2d at 110.

Moreover, the court in _Dawejko_ set forth three additional factors to be taken into consideration when determining whether or not the product-line exception should be applied:  (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. _Id_. at 22-23, 434 A.2d at 109 (_citing Ray v. Alad Corp._, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977)).

Subsequently, in _Hill v. Trailmobile, Inc._, the Pennsylvania Superior Court expanded the holding in _Dawejko_ and held that "the product-line exception to the general rule of no liability for successor corporations may only be applied when the [above] three circumstances have each been established." 412 Pa.Super. 320, 328, 603 A.2d. 602, 606 (1992).  As such, before the product-line exception can be applied, each of the so-called _Ray_ factors must be met.

In the instant case, the Court finds it unnecessary to analyze the <u>Ray</u> factors, as it is clear that the Plaintiff cannot satisfy the precise requirements of the product-line exception itself. According to the express language of the product-line exception, Plaintiff must prove not only that the Defendant undertakes essentially the same manufacturing operation as the selling corporation but also that his injury was caused by a defect in a unit within the same product line as that which the Defendant manufactures.[8] <u>Dawejko</u>, 290 Pa.Super. at 23, 434 A.2d at 110.

It is undisputed that from 1976, when "The Cyril Bath Company of Cleveland, OH" sold its assets to TCBC, until the present time, no successor corporation to "The Cyril Bath Company of Cleveland, OH" has manufactured or distributed press brakes. (Plaintiff's Response, Exhibit 6 at 12). While not disputing this fact, Plaintiff argues that because both the press brake and the stretch forming machinery "shape metal," they should be considered to be of the same product line. (Plaintiff's Response at 11). Additionally, Plaintiff asserts that "the fact that the Defendant no longer manufactures press brakes should not even be considered as a factor in deciding this motion." (Plaintiff's Response, pg. 12). The Court disagrees.

---

[8] Although the exception also requires that the purchasing corporation acquire all or substantially all of the manufacturing assets of another corporation, this fact is clearly established in this case and is not argued by the parties.

While mindful of the fact that the product-line exception should not be construed too narrowly, the Court also recognizes that Dawejko permits the court in each case "'to consider whether it is just to impose liability on the successor corporation.'" Dawejko, 290 Pa.Super. at 26.   Here, the Court finds that the record is replete with evidence demonstrating the significant differences between press brakes and stretch forming machinery, such that it would be unjust to label them as being of the same product line for purposes of applying the product-line exception.

Specifically, Michael Zimmer, Vice President and Director of Finance and Administration with Cyril Bath Company, described in detail, the "big differences" in the metal forming process involving a press brake and that which involves stretch forming machinery. (Plaintiff's Response, Ex. 6 at 16-19).   For example, a press brake merely puts a crease in the metal sheets, capable of fracturing at high levels of resistance. Id. at 18.   On the other hand, the stretch forming machinery is a highly specialized computerized process which involves stretching metal sheets in such a way so as to prevent fractures and allow the metal sheets to withstand heavy resistance as is necessary for the aerospace market. Id. at 19. Defendant simply could not produce the metal products its clients desire by using a press brake; only the stretch forming machinery will accomplish the desired result.   Therefore, it is evident that

press brakes and stretch forming machinery are distinct products designed to accomplish distinct results.

Additionally, the 1976 Purchase Agreement ("Agreement") itself specifically identifies, the manufacture and sale of press brakes separately from the manufacture and sale of stretch forming machinery. (Id. at 1). Similarly, in his own description of the sale of the original The Cyril Bath Company to TCBC, Plaintiff distinguishes between "the press brake manufacturing business" and "the other metal forming businesses." (Plaintiff's Response, at 7). Additionally, a review of Defendant's website, reveals a list of the various different metal forming processes, each of which involve their own unique types of machinery.[9] (Plaintiff's Response, Ex. 5). As explained by Michael Zimmerman, while each of these processes do work to form metal, they do so in separate and distinct ways and each involve their own specialized process. (Plaintiff's Response, Ex. 7 at 16-21).

The sole authority cited by Plaintiff, Dawejko, further demonstrates that the successor corporation must manufacture the same product line as that which encompasses the machine on which the Plaintiff was injured in order to apply the product-line exception. In Dawejko, the Plaintiff suffered injuries due to a defect in the lifting machine manufactured by Mansaver Industries, Inc.

───────────────

[9] The Court does note that press brakes are not included in this list.

11

Subsequently, Mansaver sold its assets to American Chain and Cable Company (ACCO). Because ACCO continued to manufacture and sell the identical lifting machine that injured Plaintiff, the court applied the product-line exception and held that ACCO could be held strictly liable for Plaintiff's injuries. Dawejko, 290 Pa.Super. at 26-27, 434 A.2d. at 111-112. Significantly, the court relied upon the fact that the successor corporation had "continued to operate the business[,] manufacturing and selling the identified product as its assignor corporation had done...," that being the identical lifting machine. Id. at 27, 434 A.2d. at 112.

Similarly, in Ray, the predecessor and successor product lines were identical. See Ray, 19 Cal.3d at 34 (applying the product-line exception when the successor company manufactured the same line of ladders as that on which the plaintiff was injured). Moreover, the court in Ray made explicitly clear that the product-line exception would apply to "defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." Id. at 34.

This is simply not the case here. Instead, the Court finds the instant case to be more in line with Turner v. Mudrick Machine Works, 589 F.Supp. 771 (E.D.PA, 1984), in which the plaintiff sustained injuries caused by a "shredder" manufactured by the predecessor corporation, but filed suit against the successor corporation which manufactured "pickers." Id. at 776. In Turner,

the successor corporation thoroughly set forth the distinct differences between the two products, and, as such, the court had little trouble finding that they were of separate product lines and, therefore, did not apply the product-line exception.[10]

Here, just as in Turner, the Plaintiff has set forth nothing to contradict the evidence in the record which demonstrates that the press brake and the stretch forming machines are significantly dissimilar, and his mere assertions otherwise are insufficient to survive summary judgment.[11]  Mitchell v. Powermatic Corp., 2004 WL 292479 at *5 (E.D.Pa.)(speculation and conjecture do not create a material factual dispute sufficient to defeat entry of summary judgment.)  Therefore, the Court finds that, in this case, it would be unjust to apply the product-line exception to Defendant. See Dawejko, 290 Pa.Super. at 26.

---

[10] Although the decision in Turner came before the Pennsylvania Superior Court's holding in Hill which made satisfaction of the Ray factors a prerequisite to applying the product-line exception, a plaintiff still, in addition to the Ray factors, must establish the underlying principles of the exception itself, which include that the successor corporation engage in essentially the same manufacturing operation and that the successor corporation manufacture the same product line as that which encompasses the product which injured the Plaintiff.

[11] Because Plaintiff has failed to establish that his injury occurred from a defect in a machine which is in the same product line as those which Defendant manufactures, the Court need not address Plaintiff's arguments that Defendant undertakes essentially the same manufacturing operation as The Cyril Bath Company of Cleveland, OH.

**V. Conclusion**

For the above stated reasons, the Court finds that the product-line exception to the general rule of non-liability for successor corporations does not apply to this case and, thus, Defendant cannot be held liable for those injuries suffered by Plaintiff. Accordingly, the Court grants summary judgment in favor of Defendant.

An appropriate Order will be issued.


S/Alan N. Bloch
United States District Judge

Dated:   March 29, 2006

cc/ecf:   Counsel of record

14